UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:20-CV-00074-JHM

| | |
|---|---|
| MORRIS W. BEALS and JONI BEALS | PLAINTIFFS |
| and | |
| CLEARPATH MUTUAL INSURANCE COMPANY | INTERVENING PLAINTIFF |
| and | |
| STINSON BROS. WELDING SERVICE, INC. | INTERVENING PLAINTIFF/ THIRD-PARTY DEFENDANT |
| V. | |
| COUNTRYMARK ENERGY RESOURCES, LLC | DEFENDANT/ THIRD-PARTY PLAINTIFF |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on CountryMark's Motion for Summary Judgment [DN 46]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion is **GRANTED**.

### I. BACKGROUND

Plaintiff Morris Beals ("Mr. Beals") is a professional welder employed by Stinson Brothers ("Stinson Bros."), a welding company which has been in operation for more than 55 years. Mr. Beals and Stinson Bros. frequently performed welding services for CountryMark Energy Resources ("CountryMark"), an oil production company with over 1,200 active oil wells in the region. Stinson Bros. has done welding work on CountryMark's oil structures dating back to 1967, evaluating and/or repairing hundreds of structures for CountryMark. [DN 46-4 at 15].

1

In 2019, CountryMark re-located a steel oil well pumping unit substructure ("the structure" or "structure") from an inactive site in Indiana to Henderson County, Kentucky. Because the structure was old, CountryMark needed to make some repairs to it—not the least of which was building a platform, flooring, and handrails on the structure. CountryMark hired Stinson Bros., as it had numerous times before, to evaluate the structure and make the necessary repairs.

Mr. Beals testified that he knew there was a danger of falling off the structure, because it was high off the ground with no platform or flooring to stand on (he was there in part to build the platform for the structure). [DN 46-8]. Mr. Beals observed the framing of the structure and determined that it was structurally safe for him to climb up on. [*Id.* at 14–15]. Using his own ladder, he climbed on to the structure and began to use his acetylene torch to cut some old steel pieces from the structure as part of the rehab process. [DN 50 at 3]. Mr. Beals stepped onto a small piece of rusted pipe, which gave way, causing him to fall ten feet to the ground. As a result of his fall, Mr. Beals broke his spine and became paralyzed. [*Id.* at 2–3]. He now has no feeling below his chest and is confined to a wheelchair. [*Id.* at 2].

Mr. Beals received workers' compensation from Stinson Brothers' insurer, Clearpath Mutual Insurance Company. Mr. Beals now brings claims against CountryMark for negligence in failing to provide him with safety equipment and otherwise ensure his safety, as well as negligence per se. Mrs. Joni Beals, Beals's wife, has also sued for loss of consortium. CountryMark filed for summary judgment, claiming it is protected by up-the-ladder immunity for contractors under Kentucky state law. In the alternative, CountryMark argues for summary judgment on Mr. Beals's negligence claims.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

The question before the Court is whether CountryMark is a statutory contractor within the express provisions of the Kentucky Workers' Compensation statute. In Kentucky, workers' compensation is the exclusive remedy for workers injured on the job, meaning that workers who are entitled to workers' compensation are generally unable to recover in negligence suits brought against their employers for on-the-job injuries. *See Beaver v. Oakley*, 279 S.W.2d 527, 530 (Ky.

2009); KRS § 342.690(1). This immunity for employers extends to contractors under the Kentucky statute, with the purpose of "discourag[ing] a contractor from subcontracting work that is a regular or recurrent part of its business to an irresponsible subcontractor in an attempt to avoid the expense of workers compensation benefits." *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 585 (Ky. 2007). As such, a contractor[1] is entitled to "up-the-ladder" immunity—immunity from tort liability resulting from injuries to the employees of its subcontractor—if (1) the subcontractor employing the injured worker ensures workers compensation for its employees and (2) the work being performed by the injured employee is "of a kind which is a *regular or recurrent* part of the work of the trade, business occupation, or profession" of the contractor. KRS § 342.610(2) (emphasis added).

Because up-the-ladder immunity is an affirmative defense, CountryMark must prove both statutory elements to avoid a suit by Mr. Beals. Because Stinson Bros. (the subcontractor), provided workers' compensation insurance to its employees, the only other issue is whether Mr. Beals was doing work that was a "regular or recurrent" part of CountryMark's business at the time of his injury. "Recurrent" simply means occurring again or repeatedly. "Regular" means customary or normal, or happening at fixed intervals. *Daniels v. Louisville Gas & Elec. Co.*, 933 S.W.2d 821, 824 (Ky. Ct. App. 1996). The Webster's Dictionary defines "regular" work as a "customary, usual, or normal part of the premised owner's trade, business, occupation, or profession." *See Cain*, 236 S.W.3d at 589. As the Kentucky Supreme Court wrote in *Cain*, "regular or recurrent" work is "work that the business repeats with some degree of regularity, and

---

[1] KRS § 342.610(2)(b) defines a "contractor" as "[a] person who contracts with another … [t]o have work performed of a kind which is a regular or recurrent part of the work of" that person's "trade, business, occupation, or profession."

it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees." *Id.* at 588.

The Sixth Circuit has developed a three-part test for determining what type of work by a contractor constitutes "regular or recurrent" under Kentucky's up-the-ladder statute. *See Black v. Dixie Consumer Prods. LLC*, 835 F.3d 579, 585 (6th Cir. 2016). The three factors used to consider whether the contractor is entitled to immunity are (1) whether the subcontractor was hired to perform the work during which the injury occurred; (2) whether the subcontractor's work was a customary or usual part of the contractor's business, or work that the contractor repeats with "some degree of regularity;" and (3) whether the work was that which the contractor "or a similar business would normally perform or be expected to perform with employees." *Id.* If all three questions are answered affirmatively, the Sixth Circuit finds the "regular and recurrent" requirement to be met. *Id.*

For the first prong, it is plainly evident that the subcontractor, Stinson Bros., was hired by CountryMark to perform the welding work Mr. Beals was performing when he was injured. As for prong two, the factual record consistently shows that welding is a regular part of CountryMark's business as an oil company. CountryMark hired the professional welders at Stinson Bros. to evaluate and repair "hundreds" of oil pumps and supporting structures over the course of the last fifty years. [DN 46-4 at 9, 15]. Welding is repeated with "some degree of regularity" to ensure CountryMark's continued operation. *Black*, 835 F.3d at 585. Welding is unquestionably a regular and recurrent part of CountryMark's business in the oil industry.

Beals argues that the welding work he was engaged in at the time of his injury was not regular "routine maintenance" of CountryMark's business because it involved a special project—fabrication work necessary to raise a pumping unit onto an elevated structure. [DN 50 at 15]. He

5

cites a Sixth Circuit case, *Estate of Dohoney v. Int'l Paper Co.*, where the court reversed a finding of summary judgment for the contractor on up-the-ladder immunity in a case where a subcontractor's employee was electrocuted while performing specialized work that the contractor, International Paper, did not regularly perform. 560 F. App'x 564 (6th Cir. 2014). However, CountryMark, and other businesses like it, regularly elevate pumps in flood prone areas. Regular or recurrent work "is work that is customary, usual, or normal to the particular business … or work that the business repeats with some degree of regularity." *Louisville Gas & Elec. Co. v. Galvan*, No. 2019-CA-0961-MR, 2020 WL 6106958, at *4 (Ky. Ct. App. Oct. 16, 2020).[2] The record shows that CountryMark repurposed structures and elevated pumps with some degree of regularity. In fact, Mr. Beals and Stinson Bros. had performed this very same welding work on ten to twelve similar structures for CountryMark in the few months leading up to the events in this case alone. [DN 46-3 at 3; DN 46-4 at 8–9].

The third inquiry of the *Black* test asks whether the work was that which the contractor "or a similar business would normally perform or be expected to perform with employees." In *Black v. Dixie*, the Sixth Circuit found that a subcontractor's delivery service was the type of work that a consumer products producer such as Dixie might be expected to handle itself, even though it contracted it out. 835 F.3d at 587. Likewise, CountryMark, or any oil production company, would normally be expected to do this work with its employees.

The standard for whether a type of work is "regular and recurrent" for a contractor is not whether the employees of the contractor have ever performed the work in question themselves. Both the Kentucky Supreme Court and Kentucky federal courts have found that "[a] contractor that never performs a particular job with its own employees can still come within KRS

---

[2] *Galvan* was overturned by the Kentucky Supreme Court on jurisdictional grounds. Still, the up-the-ladder analysis remains instructive for this case and this body of law.

342.610(2)(b)." *Doctors' Assocs., Inc. v. Uninsured Employers' Fund*, 364 S.W.3d 88, 92 (Ky. 2011); *see also Boyd v. Doe*, No. 12-136-ART, 2014 WL 5307951, at *2 (E.D. Ky. Oct. 15, 2014). As long as the company contracts away a job it is expected to perform themselves—even if it never actually performs the job—the company can be considered a "contractor" that reassigned "regular or recurrent" work. *Doctors' Assocs.*, 364 S.W.3d at 92. For example, the court in *Boyd v. Doe* found that the installation of plumbing and electricity was a regular and recurring part of a building contractor's business even though the contractor regularly outsourced those tasks to subcontractors. *Id.*

Although CountryMark readily admits it lacks the capacity to perform this type of welding work in-house, the work is still a regular and recurrent part of its oil production business which it chooses to reassign to a subcontractor. Thus, CountryMark is a statutory contractor protected by up-the-ladder immunity under KRS § 342.610(2).

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that CountryMark's Motion for Summary Judgment [DN 46] is **GRANTED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Counsel of Record

November 8, 2021